UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| JEMETRIC DEBROW | CIVIL ACTION NO. 03-2219-P |
| versus | JUDGE HICKS |
| WARDEN BURL CAIN, ET AL. | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

A Caddo Parish jury convicted Jemetric Debrow ("Petitioner") and two co-defendants of armed robbery and attempted second degree murder. Petitioner was adjudicated a second felony offender as to the armed robbery and was sentenced to 60 years, to run concurrently with a 40-year sentence for the attempted second degree murder.

Petitioner then pursued a direct appeal. State v. Debrow, 781 So.2d 853 (La. App. 2d Cir. 2001), writ denied, 807 So.2d 862 (La. 2002). Petitioner followed that by filing with the state court an application for post-conviction relief which presented seven issues. The trial court, appellate court and Supreme Court of Louisiana all denied relief. Petitioner then filed this federal habeas corpus petition, urging the same seven issues he presented in his post-conviction application. It is recommended, for the reasons that follow, that the petition be denied.

**Background Facts**

John Sponsel lived in Greenway Square Apartments on Youree Drive in Shreveport. Sponsel heard a knock at his door one evening and, unable to see anyone through the peephole, opened the door. Standing outside were three black males who Sponsel later identified as Petitioner, Lakeith Debrow and Clifford Owens. One of the men immediately placed a .25 caliber handgun to Sponsel's head and pulled the trigger, but the gun did not fire. The other two men were armed with .22 pistols, and all three wore tube socks on their hands.

The three men entered Sponsel's apartment and ordered him to lie face-down on the kitchen floor. They asked Sponsel for his money and drugs. One man stood guard over Sponsel, and the others took from the apartment a VCR, jacket, face-plate to a car stereo, meat from the freezer and $400.

Sponsel heard one of the men say that Sponsel would be killed, so the occasional semi-pro football player jumped up and rushed the man who was guarding him, pushed him aside and ran toward the front door. As he reached the door, Sponsel was twice shot in the back and fell. As the three men left the apartment, one of them shot Sponsel once in the head. The three men left in Sponsel's car, which was later found stripped and burning.

A detective received a phone call from an anonymous caller who said that Cedric Owens and persons nicknamed "Keke" and "Meme" were involved in the shooting. A check

of alias files listed Petitioner as "Meme", and Petitioner's address was consistent with information provided by the anonymous caller.

Photographic lineups were prepared and taken to Sponsel in the hospital. He identified Petitioner in the first lineup, and he identified co-defendant Clifford Owens from a third lineup. He did not identify Jerry Wilson, whom the anonymous caller had named, and whose picture was in the second lineup.

Police executed a search warrant at Petitioner's address and encountered his brother Lakeith, who said his nickname was "Keke." A search of Petitioner's bedroom revealed a small .25 pistol inside a stereo speaker, two .22 pistols, Petitioner's ID card and several photos that showed Petitioner, his two co-defendants and Marlin Hanna together. Another .22 pistol and a .38 caliber pistol were found in Lakeith's bedroom. Police could not recover any usable fingerprints from any of the firearms seized from the home, and testing was inconclusive as to whether a bullet taken from Sponsel's apartment had been fired from any of the weapons. Police later showed Sponsel a fourth lineup, from which Sponsel immediately identified Lakeith Debrow.

**Probable Cause for Arrest**

Petitioner argues that his constitutional rights were violated when police used evidence from an untested, anonymous informant to arrest him. The trial court denied this claim, reasoning that the information provided by the informant was only one piece of the evidence that led to the arrest. There was also the victim's identification of Petitioner from

the photographic lineup. And a preliminary examination had been held, at which the court determined that probable cause was present. Tr. 1465. After failing to convince the trial court to grant post-conviction relief, Petitioner presented this claim to the state appellate court, which denied a writ application because the "trial court correctly found that the police had probable cause to arrest the defendant based on an anonymous tip, verified by police records and by the victim's subsequent identification of the defendant from a photo lineup." Tr. 1563. The Supreme Court of Louisiana denied writs without comment. Tr. 1634.

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).

Petitioner has not identified a legal basis for federal habeas relief based on this claim. The Supreme Court stated in Gerstein v. Pugh, 95 S.Ct. 854 (1975) that there is an "established rule that illegal arrest or detention does not void a subsequent conviction." See also Montoya v. Scott, 65 F.3d 405, 421 (5th Cir. 1995). The claim also appears to be barred by the doctrine of Stone v. Powell, 96 S.Ct. 3037 (1976), which states that a federal court may not grant habeas relief based on a Fourth Amendment violation where the state has provided an opportunity for full and fair litigation of the issue. To satisfy the opportunity for

the full and fair litigation requirement, the state need only provide the processes whereby a defendant can obtain full and fair litigation of a Fourth Amendment claim. Stone bars habeas consideration of the claim whether or not the defendant employs those available processes. Janecka v. Cockrell, 301 F.3d 316, 320 (5th Cir. 2002). Louisiana provided Petitioner the opportunity (which he took) to litigate probable cause at a preliminary examination. There is no basis for relief with respect to this claim.

**Identification Procedure**

Petitioner argues that the procedure behind the photo lineup that resulted in his identification entitles him to habeas relief. The typical argument in this setting is that an eyewitness identification at trial was tainted by an unduly suggestive photo lineup before trial. The thrust of Petitioner's argument, however, is that the complained of photo-lineup identification was among the grounds for probable cause that led to his arrest. Therefore, Petitioner argues, if the initial identification is disregarded, there is only the informant's phone call to provide a basis for probable cause, which Petitioner says would then be lacking and support his first issue, discussed above.

Even if the lineup were deemed unduly suggestive, the rules from Gerstein and Stone, discussed above, would preclude habeas relief based on the asserted lack of probable cause for arrest. If the claim were viewed as a traditional argument that the courtroom identification was tainted by the photo lineup, the claim also fails. The trial court rejected the claim, noting that it held a pretrial hearing on a motion to suppress and heard from the

officers who conducted the lineup. Corporal Cedric Wilson testified that after he received the tip that led to his suspicion of Petitioner and others, he compiled three separate photo lineups that each consisted of six pictures of black males with similar features. Tr. 377. The victim, Sponsel, was told that the suspect may or may not be in the lineup and that the witness should focus on the facial features. Sponsel was in traction and could not move when the officers visited him with the lineups. He did seem coherent and understood what was happening. Detective Gryder held the first lineup above Sponsel's head so that he could see it. Sponsel stated, "No. 2," and added, according to Corporal Wilson, that No. 2 was the man who put the gun to Sponsel's head when he first opened his door. Tr. 371-81. Detective Gryder recalled that Sponsel picked Petitioner from the lineup (although Gryder thought that Sponsel said Petitioner was the man who shot him in the head as the robbers were leaving the apartment).

On post-conviction relief, the trial court recalled that it had previously denied a motion to suppress the lineup as faulty or suggestive. As for Petitioner's recent argument that the victim's injuries rendered him unable to provide an identification, the trial court found that Petitioner had not shown that the identification was unreliable. Furthermore, Sponsel had been able to identify Petitioner at trial, when Sponsel was healthy. Tr. 1465-66. The appellate court found: "No improperly suggestive identification procedure was employed by the police, nor is there any showing that any misidentification occurred." Tr. 1563.

A conviction based on an eyewitness identification at trial following a pretrial identification by photograph will be set aside only if the identification procedure was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. A two-step process governs the admissibility of identification evidence: First, a court must determine whether the pretrial identification was impermissibly suggestive; if it was, then second, a court must determine whether, under the totality of the circumstances, the suggestiveness leads to a substantial likelihood of irreparable misidentification. Coleman v. Quarterman, — F.3d ----, 2006 WL 1991686 (5th Cir. 2006).

The state courts found that the procedure used in this case was not impermissibly suggestive. The record supports that conclusion, so the decision was not an objectively unreasonable application of Supreme Court precedent that would permit habeas relief. There is no need to address the second prong of the analysis.

**Implication of Prior Arrest**

A police officer testified at trial about how the lineup was put together. He explained that AFIS is a computer system used statewide that stores photographs of persons who have been arrested. In this case, he explained that he pulled some ordinary mugshots from a file cabinet drawer because the suspects who had been identified did not have AFIS photos. He later explained: "Well, what we did was we compiled three separate lineups, pulled the mug shots first for three separate lineups with each one of the individuals in their own lineup. I pulled Jemetric Debrow (Petitioner) and as I said Jerry Wilson, known as Keke." Tr. 943-45.

Petitioner argues that this testimony implied that he had been arrested in the past, which was inadmissible and prejudicial because it presented him to the jury as a bad person. The trial court denied the claim, reasoning that the prosecution did not elicit any testimony about prior arrests. Tr. 1466. The appellate court stated: "Any alleged improper remark by a police officer was insufficient to warrant relief. There is no showing that a fair trial was made impossible by any such remark." Tr. 1563.

Petitioner has not identified any clearly established Supreme Court precedent that was unreasonably applied when this testimony, to which no objection was raised, was given at trial. Louisiana has evidence rules that limit the admission of other crimes evidence, but federal courts do not grant habeas relief based on mere errors in the application of State evidentiary rules or even consider it relevant whether State evidentiary rules were satisfied. Only federal constitutional errors that satisfy the demanding standards of Section 2254 merit habeas relief.

The Due Process Clause provides a mechanism for relief when a State court wrongfully admits evidence, but only if the evidence is so unduly prejudicial that it renders the trial fundamentally unfair. The sole inquiry is whether the admission violated the Constitution. Bigby v. Cockrell, 340 F.3d 259, 271-72 (5th Cir. 2003), citing Dawson v. Delaware, 112 S. Ct. 1093 (1992) and Estelle v. McGuire, 112 S.Ct. 475 (1991). If constitutional error is found, a petitioner's claim will still fail absent a showing that the evidence had a substantial and injurious effect or influence in determining the jury's verdict.

Bigby, 340 F.3d at 272. Of course, for this court to order relief, it must find that the State court performed an objectively unreasonable application of those principles.

The officer's statement about mugshots did imply a prior arrest, but it appears to have been testimony offered in a forthright response to a relevant question about how the lineup was assembled. There is no indication or evidence of an improper motive behind the testimony, and the officer placed no emphasis upon the mugshot issue. He did not even actually say directly that Petitioner had a prior arrest or for what crime he had been arrested. Petitioner has not demonstrated that this bit of testimony, which merely implied a prior arrest of some kind, was so prejudicial that it rendered his trial fundamentally unfair and was a substantial influence on the jury's verdict. Habeas relief is not warranted.

**Speedy Trial**

Petitioner was arrested in February of 1997. He filed a pro se motion for a speedy trial in October 1997. Tr. 147-48. The motion was not granted. Trial was held in June 1999. Petitioner sought post-conviction relief based the alleged denial of his speedy trial rights.

The trial court, on post-conviction application, reasoned that there was a delay but that there were adequate reasons for it. During the course of the delay, the court entertained motions to suppress and compel, and the court relieved one defense attorney and appointed a new one in September 1998. The new attorney was granted additional time to prepare for trial, and a setting in May 1999 was continued on joint motion of counsel. After another joint motion for continuance, the court set the date that resulted in trial. Moreover, the court reasoned, Petitioner failed to demonstrate that he experienced any impairment in the

presentation of his defense because of the delay. Tr. 1466-67. The appellate court stated simply that Petitioner "was not denied his right to speedy trial." Tr. 1563.

Federal consideration of a claim that a state has violated its own speedy trial rules is limited to a determination of whether the state's action has violated Petitioner's constitutional right to a speedy trial or to due process. Millard v. Lynaugh, 810 F.2d 1403, 1406 (5th Cir. 1987). A federal habeas court determines whether there was an undue delay between charging and trial by applying the balancing test of Barker v. Wingo, 92 S.Ct. 2182 (1972) based on the following factors: (1) the length of delay, (2) the reason for delay, (3) the assertion of the speedy trial right, and (4) prejudice to the accused. See also Cowart v. Hargett, 16 F.3d 642, 646 (5th Cir. 1994).

The delay in this case was not extraordinary for the local court system, and the trial court articulated ample reasons for the delay. Petitioner did assert his right by motion and, he says, by objecting to his counsel's requests for continuances, but he has not articulated any prejudice stemming from the delay. Petitioner apparently recognizes his burden of showing prejudice, but the best he can offer is that he was prejudiced by "the mere fact that he was denied a right in which the constitution promised him." Consideration of that and the other factors show that the state court's resolution of this issue was not an objectively unreasonable application of Barker and similar precedents.

**Multiple Offender Enhancement**

Petitioner, several years before the events at issue here, was charged with aggravated battery, and he eventually pleaded guilty to a lesser charge of simple kidnapping. After

Petitioner was convicted of the crimes at issue here, the prosecutor sought and obtained an enhancement of the armed robbery sentence (based on the prior simple kidnapping conviction) pursuant to Louisiana's multiple offender statute.

Petitioner argues that the enhancement was invalid because simple kidnapping is not, under Louisiana law, a legislatively recognized responsive verdict to aggravated battery. The trial court, acting on the post-conviction application, denied the claim because Louisiana's multiple offender statutes include a provision that any challenge to a previous conviction that is not made before sentence is imposed may not thereafter be raised to attack a multiple offender sentence. Tr. 1467. The appellate court simply held: "The habitual offender proceeding was not invalid." Tr. 1563.

Petitioner contends that the state court's "rationale is contrary to the State's own laws and thereby deprives the petitioner of equal protection." Petitioner has not, however, identified any Supreme Court precedent or other federal authority that would give rise to a constitutional violation based on the alleged state-law error. Claims that a state court improperly applied state law do not constitute an independent basis for federal habeas relief. Estelle v. McGuire, 112 S.Ct. 475, 479-80 (1991). Furthermore, the Supreme Court has not recognized a right to attack, on habeas, prior convictions used to enhance a current offense for reasons other than violations of the right to counsel. See Paul D. Leake, Limits to the Collateral Use of Invalid Prior Convictions to Enhance Punishment for a Subsequent Offense: Extending Burgett v. Texas and United States v. Tucker, 19 Columbia Human Rights Law Review 123 (1987); Alan C. Smith, More Than a Question of Forum: The Use

of Unconstitutional Convictions to Enhance Sentences Following Custis v. United States, 47 Stanford Law Review 1323, 1329-31 (1995). No relief is permitted with respect to this claim.

**Hearsay**

Detective Gryder testified at trial and, on cross examination by *counsel for a co-defendant* (not the prosecutor), he was asked about his questioning of Marlin Hanna, an acquaintance of the defendants who lived near where the victim's car was recovered. Gryder was asked if Hanna was questioned about the events at Greenway Plaza Apartments, and he said that Hanna was questioned and denied any involvement. Counsel then asked who was involved in the questioning of Hanna and, in response, Gryder talked about the questioning, said he did not recall exactly what was said, said he did "recall that he (Hanna) denied any involvement in it and made some references to one of the defendants." *Defense counsel* then asked, "Can you indicate which defendant he may have made a reference to?" Gryder answered, "I believe it was Jemetric (Petitioner)." Counsel then asked for the substance of that reference, and counsel for Petitioner objected on the grounds that such testimony would be hearsay. The court sustained the objection, and the substance of the reference was not disclosed. Tr. 924-25. Petitioner argues to this court that he was denied due process because the state solicited hearsay testimony from Detective Gryder in violation of the Louisiana and Federal Codes of Evidence.

The trial court, acting on the post-conviction application, ruled that the sustained objection resulted in a lack of merit to the claim. Tr. 1479. The appellate court ruled that

the trial court "did not improperly admit hearsay evidence." Tr. 1563. Petitioner argued to the state court on post-conviction application that the hearsay testimony violated Louisiana Code of Evidence art. 801. Petitioner did not invoke the Confrontation Clause or other federal-law arguments. See Tr. 1425-26. The state argues that Petitioner's presentation of the claim to the state court solely in terms of state law did not exhaust a federal issue under the rules described in cases such as Baldwin v. Reese, 124 S.Ct. 1347 (2004). That argument appears to be correct, which warrants rejection of this issue as a grounds for relief.

Even if it were assumed that Petitioner properly exhausted a Confrontation Clause claim pursuant to Crawford v. Washington, 124 S.Ct. 1354 (2004), the Fifth Circuit has held that Crawford is not retroactively applicable to cases on habeas review. Lave v. Dretke, 444 F.3d 333 (5th Cir. 2006), petition for cert. filed (June 13, 2006). Lave arose from similar facts, in which an officer testified that he interviewed a suspect who implicated the petitioner.

Finally, the lone reference, not solicited by the government, that another suspect "made some references" to Petitioner when police questioned him about his involvement in the crime at most implied an accusation of guilt and did not, considering all of the evidence admitted at trial, substantially influence or prejudice the verdict.

**Ineffective Assistance of Counsel**

Petitioner urges that his counsel rendered ineffective assistance because he (1) did not join the pro se motion for a speedy trial, (2) did not interview potential alibi witnesses, (3)

did not object to the admission of the photographic lineup and (4) did not object to Officer Gryder's testimony that made reference to statements by Marlin Hanna.

Petitioner bears the burden of proving two components, deficient performance and prejudice, to establish ineffective assistance of counsel. Counsel's performance was deficient only if he made errors so serious that, when reviewed under an objective standard of reasonable professional assistance and afforded a presumption of competency, he was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984). Prejudice exists only if there is a reasonable probability that, but for the error, the result of the trial would have been different. A reasonable probability is one sufficient to undermine confidence in the outcome. Id. 104 S.Ct. at 2068.

The trial court rejected all of the claims for failure to show prejudice (Tr. 1468), and the appellate court agreed that there was "no showing of ineffective assistance of counsel at trial." Tr. 1563. The complaint that counsel did not properly object to the Marlin Hanna testimony is without merit because counsel did successfully object as soon as Gryder's testimony moved to that topic. Counsel was also not deficient for failing to object to the testimony about the photographic lineup. Petitioner's main complaint about this issue is that the testimony included the mugshot reference. He argues that counsel should have objected to the testimony or requested a limiting instruction from the court on how to utilize the testimony that implied a prior arrest. Counsel was not deficient for failing to jump up, object and request the court instruct the jury on an issue, thus drawing undue attention to it, when the issue may have quietly passed the jury's notice absent such actions. Counsel cannot be

deemed constitutionally deficient, under these circumstances, for letting the testimony, which could not have been easily anticipated, pass without highlighting it to the jury.

A new trial is also not required on the grounds that counsel did not join in the pro se motion for a speedy trial. The record shows that counsel believed additional time was necessary to prepare the defense, and Petitioner has offered nothing more than speculation to suggest prejudice stemming from the relatively ordinary delay between the institution of the charge and trial.

Finally, Petitioner urges that counsel should have interviewed witnesses who attended a party he claims to have been attending at the time of the crime. Counsel for Petitioner called at trial Petitioner's mother, grandmother and cousin to testify that all of the defendants had been present at the party at the time of the shooting. Petitioner bases his "failure to interview" claim on his mother's testimony during cross-examination by the prosecutor, who was attempting to undermine the mother's testimony about the alleged party. The exchange relied upon by Petitioner is:

> Q. The day after the Police arrested your sons, did you contact the Police and give them a list of the 50 folks that were at your house that night?
>
> A. No. Nobody ever talked to me.
>
> Q. OK. And you didn't think to take them a list of 50 folks that they could say where they were?
>
> A No, because they didn't want to talk to me.

Tr. 1115. This record does not come close to showing that counsel, who presented the alibi defense, was deficient in her interview of the alibi witnesses. Furthermore, Petitioner has not

articulated any facts that would have been discovered by such interviews that would cast doubt on the verdict.

Accordingly;

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be **DENIED,** and that Petitioner's complaint be **DISMISSED WITH PREJUDICE.**

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this 14th day of August, 2006.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE